IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LEROY HAROLD G.,

                          Plaintiff,

          v.                                      Civil Action No.
                                                  5:20-CV-0298 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

DOLSON LAW OFFICE                     GREGORY P. FAIR, ESQ.
126 North Salina Street, Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                HUGH D. RAPPAPORT, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

          Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§ 405(g), are cross-motions for judgment on the pleadings.[1]  Oral

argument was conducted in connection with those motions on May 12,

2021, during a telephone conference held on the record. At the close of

argument, I issued a bench decision in which, after applying the requisite

deferential review standard, I found that the Commissioner's determination

did not result from the application of proper legal principles and is not

supported by substantial evidence, providing further detail regarding my

reasoning and addressing the specific issues raised by the plaintiff in this

appeal.

After due deliberation, and based upon the court's oral bench

decision, a transcript of which is attached and incorporated herein by

reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is VACATED.

_____

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C.
§ 636(c), has been treated in accordance with the procedures set forth in General
Order No. 18. Under that General Order once issue has been joined, an action such as
this is considered procedurally, as if cross-motions for judgment on the pleadings had
been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

3)     The matter is hereby REMANDED to the Commissioner,

without a directed finding of disability, for further proceedings consistent

with this determination.

4)     The clerk is respectfully directed to enter judgment, based

upon this determination, remanding the matter to the Commissioner

pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:     May 19, 2021
           Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
LEROY HAROLD G.,

                            Plaintiff,

vs.                                  5:20-CV-298

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-------------------------------------------x

      Transcript of a **Decision** held during a

Telephone Conference on May 12, 2021, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

                   A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:      LAW OFFICES OF STEVEN R. DOLSON
                  Attorneys at Law
                  126 North Salina Street, Suite 3B
                  Syracuse, New York  13202
                    BY:  GREGORY P. FAIR, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                  Office of General Counsel
                  J.F.K. Federal Building
                  Room 625
                  Boston, Massachusetts  02203
                    BY:  HUGH D. RAPPAPORT, ESQ.

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1                    (The Court and all counsel present by

2              telephone.)

3          THE COURT:  Let me begin by thanking counsel for

4   excellent presentations.  This is an interesting case and I

5   enjoyed hearing your arguments and reading your briefs.

6          Plaintiff commenced this action to challenge an

7   adverse determination by the Commissioner of Social Security

8   finding that he was not disabled at the relevant times and

9   therefore ineligible for the benefits which he sought.  The

10  challenge is brought pursuant to 42 United States Code

11  Section 405(g).

12         The background is as follows:  Plaintiff was born

13  in September of 1968 and is currently 52 years of age.  He

14  was 41 years old at the alleged onset of his disability on

15  November 1, 2009.  Plaintiff lives in Baldwinsville.  He

16  stands 5 foot, 9 inches in height and weighs approximately

17  190 pounds.  He has at least two daughters, both of whom

18  appear to have been -- have grown into adulthood.  Plaintiff

19  graduated from high school and was in regular classes during

20  school.  He has between one and two years of college

21  education in computer science.  That was through a VESID

22  program.  At page 68 during the hearing, plaintiff testified

23  he had one year of college education; in his function report,

24  he stated he had two years of college education.  Plaintiff's

25  left-handed.  He has a driver's license.

1          Plaintiff stopped working on or about November 11,

2     2009.  In his last 15 years, he was employed initially at

3     Hechinger as a night stocker.  He lost his job in the early

4     1990s due to a bankruptcy of that company.  He then worked

5     for Georgia Pacific as a forklift operator for approximately

6     eight months in 1994 or 1995.  He then went to work for

7     Gaylord Brothers stocking shelves using a stand-up reach

8     truck and a stand-up forklift and he was also on occasion a

9     package handler.  He worked at Gaylord from 1996 until he

10    stopped working in 2009.

11          Physically, plaintiff suffers from headaches and

12    neck pain attributed by him to a work-related injury in or

13    about March of 2003.  The injury began as what he describes

14    as a crick in his neck.  He was in and out of work from that

15    date up until November 2009.  On March 24, 2010, Dr. Ross

16    Moquin performed an anterior discectomy with fusion, that is

17    reported at pages 325 through 327 of the administrative

18    transcript.  Plaintiff initially reported relief from his

19    pain after the surgery but then headaches and pain reportedly

20    resumed.

21          Plaintiff underwent umbilical hernia surgery repair

22    in July of 2017, and a second neck surgery, an anterior

23    cervical fusion with cage, on October 11, 2017 performed by

24    Dr. Richard Kelley and Dr. David Eng at Upstate.

25          The plaintiff has undergone over the years many

1    x-ray, CT scan, and magnetic resonance imaging or MRI

2    testing.

3          On April 10, 2003, an x-ray of the cervical spine

4    showed no thoracic or cervical fractures.

5          On May 6, 2003, a cervical spine CT showed only

6    remarkable for a very slight concentric posterior bulging of

7    the C4-C5 disk with no evidence of neural encroachment or

8    impingement.

9          On May 4, 2010, a cervical x-ray, spine x-ray

10   showed that the hardware installed during the surgery was

11   intact.

12         On July 6, 2010, x-ray of plaintiff's cervical

13   spine post fusion showed the metallic plate affixed to the

14   anterior margins of C5, C6, and C7 vertebral bodies.  There's

15   some slight persistent widening of the anterior C2-C3

16   intervertebral disk space.  There was marked limitation of

17   flexion.  Extension is also limited.  There was no evidence

18   of motion at the level of cervical spine fusions.

19         X-rays taken on August 13, 2010 showed the metallic

20   plate that had been affixed and there appeared to be no

21   change from the prior study.  No evidence of vertebral body

22   movement at the level of the fusion with flexion or

23   extension.  That's at page 414.

24         In or about February 2014, MRI testing was taken as

25   reflected in notes from Dr. Ross Moquin's examination at

1    page 541 with no evidence of cord compression or exiting

2    nerve root impingement.  Normal cervical lordosis.  No

3    evidence of dynamic instability.  The fusion appeared to be

4    excellent and in place and no evidence of failure.

5          On August 26, 2015, cervical x-rays revealed the

6    anterior cervical fusion at C5, C6, and C7 with no dynamic

7    instability noted on flexion or extension views.

8          On February 8, 2012, it was noted that a metallic

9    plate was affixed in an x-ray that was taken.  The vertebral

10   body alignment appears anatomic.  There's limitation of both

11   flexion and extension.  No evidence of motion across the

12   fused vertebral bodies.

13         MRI testing of the cervical spine on January 29,

14   2015 revealed stable appearance to the postsurgical changes

15   with anterior fusion from C5 to C7.  No recurrent or residual

16   disk herniation and no evidence of spinal stenosis.

17         The plaintiff also suffers from a hip issue.  He

18   claims to suffer from fibromyalgia, a shoulder tear, and

19   depression.

20         Plaintiff has had a myriad of medical providers

21   over time including SOS, an orthopedic group.  He underwent

22   10 visits with SOS between May of 2003 and February 2007.

23   His primary provider is Dr. Michael Lax who he has been

24   seeing since July of 2003.  He has also seen -- been to two

25   pain clinics, including CNY Spine and Pain Medicine where he

1    sees Dr. Martin Schaeffer and has since 2015.  He has been to

2    New York Spine and Wellness, including seeing Physician

3    Assistant Carla Vavala.  He has been to Upstate where he has

4    seen Dr. David Eng who performed the second 2017 surgery.  He

5    has been to physical therapy, and he has seen Dr. Ross

6    Moquin, a neurosurgeon, from December 1, 2009 on.

7          Plaintiff has been prescribed various medications

8    including hydrocodone, oxycodone, Horizant, Lidocaine

9    ointment, pantaprazole, gabapentin, and Mobic.  He has also

10    had radio frequency ablations and facet injections, more than

11    five, and he has used a TENS unit.

12          In terms of activities of daily living, plaintiff

13    is able to dress, bathe or shower, groom, does some cooking,

14    does -- washes some dishes, has tried mowing his lawn, reads,

15    plays games on his computer, and he socializes with his

16    family.  He is unable, however, due to his condition, to

17    attend school events, he no longer does woodworking as a

18    hobby, he does not do any house maintenance, and no longer

19    bowls.

20          Procedurally, plaintiff applied for Title II

21    benefits protectively on June 28, 2016, alleging an onset

22    date of November 11, 2009.  At pages 100 and 235 of the

23    administrative transcript, he claims disability based on

24    cervical disk disease, low and mid back pain, and severe

25    headaches.  He also claims a torn shoulder socket and

1   fibromyalgia.

2           A hearing was conducted on October 24, 2018 by

3   Administrative Law Judge Jude Mulvey with a vocational expert

4   to address plaintiff's claim for benefits.  On December 4,

5   2018, ALJ Mulvey issued an unfavorable decision which became

6   a final determination of the agency on January 29, 2020 when

7   the Social Security Administration Appeals Council denied

8   plaintiff's request for review.  This action was commenced on

9   March 17, 2020, and is timely.

10          In her decision, ALJ Mulvey applied the familiar

11  five-step sequential test for determining disability.  She

12  first noted that plaintiff's insured status expired after

13  December 31, 2015.  She then determined at step one that

14  plaintiff had not engaged in substantial gainful activity

15  between the alleged onset date of November 11, 2009 and

16  December 31, 2015.

17          At step two, she concluded that plaintiff does

18  suffer, and did at the relevant times, from limitations that

19  impose, or conditions I should say, that impose more than

20  minimal limitations on his ability to perform basic

21  work-related functions, including cervical spine degenerative

22  disk disease and headaches.

23          At step three, ALJ Mulvey concluded that

24  plaintiff's conditions do not meet or medically equal any of

25  the listed presumptively disabling conditions set forth in

1    the Commissioner's regulations, specifically considering

2    Listing 1.04.

3            ALJ Mulvey next concluded that notwithstanding his

4    conditions, plaintiff nonetheless maintains the ability to

5    perform light work with limitations that are related to his

6    physical conditions.

7            Applying that residual functional capacity or RFC

8    finding at step four, ALJ Mulvey concluded that plaintiff is

9    incapable of performing his past relevant work and proceeded

10   to step five where she noted correctly that the burden

11   shifted to the Commissioner.

12           At step five, she first noted that if plaintiff was

13   capable of performing a full range of light work, a finding

14   of no disability would be required under the

15   Medical-Vocational Guidelines that form the regulations or

16   the Grids and specifically Grid Rule 202.21.  Noting that the

17   plaintiff had limitations that eroded the job base on which

18   the Grids were predicated, she relied on the testimony of a

19   vocational expert to conclude that plaintiff can perform work

20   that is available in the national economy notwithstanding his

21   limitations and indicated that three representative

22   occupations that plaintiff was capable of performing included

23   as a marker, a ticket seller, and a collator operator, and

24   therefore found the plaintiff was not disabled at the

25   relevant times.

1          As Commissioner correctly notes, the standard that

2     the court must apply in this action is extremely deferential

3     and very limited.  The court must determine whether correct

4     legal principles were applied and the resulting determination

5     is supported by substantial evidence.  As the Second Circuit

6     noted in *Brault v. Social Security Administration*

7     *Commissioner*, 683 F.3d 443, this is a highly deferential

8     standard.  It is more exacting than even the clearly

9     erroneous standard that lawyers are familiar with.  In

10    *Brault*, the court noted that under the standard, if a fact is

11    found by an administrative law judge, that fact can be

12    rejected by the court only if a reasonable fact finder would

13    have to conclude otherwise.

14          Plaintiff has raised two essential arguments.  One

15    is somewhat multifaceted.  He argues that the administrative

16    law judge failed to properly develop the record and that

17    there were gaps resulting from that failure, and within

18    argument one is also the contention that the residual

19    functional capacity was not based on any medical source

20    statement and that the ALJ essentially played doctor and

21    interpreted raw medical data to fashion the residual

22    functional capacity.

23          The second argument is that the administrative law

24    judge failed to perform a function-by-function analysis

25    before determining her residual functional capacity finding.

1          The second argument I will address first.  I agree

2     with the Commissioner that there is no per se requirement

3     that the function-by -- failure to perform a

4     function-by-function analysis before affixing an RFC requires

5     remand.  In this case, the administrative law judge began her

6     RFC finding with a determination that plaintiff was capable

7     of performing light work.  Light work is defined under the

8     regulations and specifically 20 C.F.R. Section 404.1567(b)

9     and I think that that essentially satisfies the need to affix

10    the functional limitations that the plaintiff experienced as

11    a result of his conditions.

12          The first argument is somewhat more troublesome.

13    We begin with the proposition that the determination of

14    disability hinges in large part on the RFC finding which

15    represents a finding of the range of tasks that the plaintiff

16    is capable of performing notwithstanding his impairments.

17    Ordinarily, an RFC represents a claimant's maximum ability to

18    perform sustained work activities in an ordinary setting on a

19    regular and continuing basis, meaning eight hours a day for

20    five days a week or an equivalent schedule.  *Tankisi v.*

21    *Commissioner of Social Security*, 521 F.App'x 29 at 33 from

22    the Second Circuit 2013.  An RFC determination is informed by

23    consideration of all of the relevant medical and other

24    evidence, 20 C.F.R. Section 404.1545(a)(3), and of course the

25    RFC finding, like everything that the Commissioner decides,

1     must be supported by substantial evidence.

2           In this case, the administrative law judge

3     concluded that plaintiff, notwithstanding his limitations, is

4     capable of performing light work as defined in the

5     regulations, except he cannot climb ladders, ropes, or

6     scaffolds.  He can occasionally kneel, crawl, balance,

7     crouch, and stoop.  He should avoid moderate exposure to

8     temperature extremes, humidity, vibrations, chemicals, moving

9     machinery, and unprotected heights.  He can tolerate no more

10    than moderate levels of noise as defined in Appendix D of the

11    *Selected Characteristics of Occupations*, 1993 edition.  He

12    should avoid work outside in bright sunlight or work with

13    bright or flickering lights.  He can perform frequent

14    extension, flexion, and rotations of the neck.  That appears

15    at page 29 of the administrative transcript.  Light work of

16    course, as I indicated earlier, is defined by regulation and,

17    among other things, involves lifting no more than 20 pounds

18    at a time with frequent lifting or carrying of objects

19    weighing up to 10 pounds.  It also requires a good deal of

20    walking or standing, or alternatively sitting, most of the

21    time with some pushing and pulling of arm or leg controls.

22          The record contains several medical opinions.  The

23    regulations require that medical opinions, meaning opinions

24    from acceptable medical sources under the regulations that

25    were in effect at the time this case was decided, because it

1    involves a claim that was filed prior to March 2017, the

2    former regulations apply.  There is a special duty to weigh

3    the opinions of a treating physician.  Ordinarily, the

4    opinion of a treating physician regarding the nature and

5    severity of an impairment is entitled to considerable

6    deference, provided that it is supported by medically

7    acceptable clinical and laboratory diagnostic techniques and

8    is not inconsistent with other substantial evidence.  *Veino*

9    *v. Barnhart*, 312 F.3d 578 at 588, Second Circuit 2002.  Such

10   opinions are not controlling, however, if they are contrary

11   to other substantial evidence in the record, including the

12   opinions of other medical experts.  Where conflicts arise in

13   the form of contradictory medical evidence, their resolution

14   is properly entrusted to the Commissioner.

15           If an ALJ does not give controlling weight to a

16   treating source's opinion, she must apply several factors, we

17   refer to them here in the Second Circuit as *Burgess* factors,

18   to determine what weight should be assigned to the opinion

19   and must provide reasons for the weight given and the

20   rejection of any opinion as controlling.

21           There are several medical opinions in the record in

22   this case that relate to plaintiff's physical capabilities.

23   Dr. Christopher Grammar, apparently a pain management

24   specialist, examined the plaintiff for purposes of Workers'

25   Compensation, plaintiff's Workers' Compensation claim and

1   gave an opinion on August 1, 2013.  That appears at 460 to

2   465, and duplicated again at 466 to 471 of the administrative

3   transcript.  He concluded there was no limitations in

4   plaintiff's physical capabilities except for his perceived

5   disability at 464.  That was discussed at page 33 of the

6   administrative transcript by the administrative law judge and

7   given some weight.  The administrative law judge in

8   determining the weight to be given noted that the sum of the

9   records shows that the claimant had some greater limitations

10  than those opined.

11          Dr. Raymond Fiorini issued an opinion on

12  February 3, 2016.  He was another examining Workers'

13  Compensation consultant.  That appears at 606 to 612.  It

14  does not contain any functional limitations, although it does

15  state what plaintiff reports, that is that he can lift only

16  eight pounds, stand for five minutes and sit for ten minutes.

17  It's discussed at page 33 and given some weight.  The one

18  significant statement is that plaintiff's condition is likely

19  to worsen over time.

20          Dr. Michael Lax, plaintiff's treating physician,

21  gave several statements, most -- many of which were properly

22  rejected as addressing in a matter reserved to the

23  Commissioner.  For example, on page 627, on February 3, 2010,

24  he opined that the plaintiff is unable to work due to his

25  neck symptoms.  Again on April 14, 2010, at page 641, he is

1    unable to work in any capacity at this time.  Those of course

2    were properly rejected.  Dr. Lax, however, gave an opinion in

3    a medical source statement on July 13, 2018 that appears at

4    pages 1706 to 1709 of the administrative transcript.  It is

5    extremely limiting.  It states that plaintiff is capable of

6    lifting occasionally and/or carrying less than 10 pounds and

7    frequently less than 10 pounds, can stand and/or walk for

8    less than two hours in an eight-hour workday.  Those are

9    inconsistent with the finding of light work.  It states that

10   plaintiff can never kneel.  The RFC states that plaintiff can

11   occasionally kneel.  It states that plaintiff can never

12   crawl.  It states that plaintiff is unable to reach above the

13   head without pain, and it states that plaintiff is unable to

14   concentrate most days due to severe and chronic pain.

15           That, as the Commissioner notes, that opinion was

16   not discussed by the administrative law judge.

17   Significantly, of course, the opinion does not state whether

18   it relates to the period prior to December 31, 2015,

19   plaintiff's date of last insured status, although it is noted

20   that plaintiff -- Dr. Lax has treated the plaintiff over time

21   since July 2003.

22           There is also an opinion from someone that's at 37F

23   or 1697 to 1700 dated June 26, 2018.  It is signed by someone

24   whose signature is illegible.  The medical specialty is

25   stated to be neurosurgery.  It is, the signature is over a

1   line that states physician's signature, and it is extremely

2   limiting, again stating plaintiff can lift and carry less

3   than 10 pounds and stand in or walk less than two hours in an

4   eight-hour workday, should never climb, balance, kneel,

5   crouch, crawl, or stoop, can only occasionally reach.  I note

6   that there is no limitation on reaching in the RFC finding.

7   So those, again, that was not discussed.  It also does not

8   specify whether it applies to the period prior to plaintiff's

9   date of last insured status, and we don't know if it's from a

10  treating source such as Dr. Ross Moquin, Dr. Eng, or

11  Dr. Kelley, and as the Commissioner properly notes, if it is

12  from Dr. Eng or Dr. Kelley, then it most likely does not

13  apply to the relevant time period.  If it's from Dr. Moquin,

14  it may well apply to that period.

15          There is also an opinion from Advanced Nurse

16  Practitioner Rosemary Klein given on July 13, 2011, it

17  appears at 666 and 667.  It states that plaintiff was unable

18  to work at this time, headache but is available for work via

19  VESID if this becomes available.  That is an opinion that is

20  properly reserved to the Commissioner and plaintiff -- as

21  Commissioner notes, Nurse Klein is not an acceptable medical

22  source under the regulations in effect at the time.

23          The duty to develop the record is an essential

24  function of an administrative law judge.  The regulations of

25  the Commissioner require that the ALJ develop a claimant's

1    complete medical history for at least 12 months prior to the

2    filing of an application for benefits and longer if necessary

3    to reach an informed decision, 20 C.F.R. Section 416.912(d),

4    and there is a corresponding regulation in the Section 404

5    section.  This obligation exists regardless of whether the

6    claimant is represented by counsel or a paralegal or instead

7    is proceeding pro se in which the duty is even more acute or

8    heightened.  The duty of an ALJ to develop the record is

9    particularly important when there are gaps in information

10   from a claimant's treating physician.  *Boswell v. Astrue*,

11   number 09-CV-533 from 2010 WL 3825622, Northern District of

12   New York, September 7, 2010, magistrate judge's report and

13   recommendation adopted at 2010 WL 3825621 by then Chief Judge

14   Norman A. Mordue on September 13, 2010.

15            In this case, I find multiple errors.  First of all

16   there's, there are gaps in the record that are wide enough to

17   drive a truck through.  It is incomprehensible to me that the

18   administrative law judge failed to even discuss the opinion

19   of a treating source such as Dr. Lax.  That in and of itself

20   is an error and the court is not -- does not properly weigh a

21   medical opinion in the first instance.  It is for the

22   Commissioner to do that.  I recognize the Commissioner's

23   argument that it may be a check-box form entitled to less

24   deference.  Certainly there's a question as to the period for

25   which it applies, but since Dr. Lax did treat the plaintiff

1    during the relevant time period, there should have been

2    clarification on that issue.  Dr. Lax should have been

3    recontacted and asked whether these opinions applied prior to

4    December 31, 2015.

5            There is also in my view a question of whether the

6    author of the June 26, 2018 opinion should have been, should

7    have been established.  It's pretty clear it's from a

8    physician, that the signature on page 1700 is over the line

9    that states physician's signature, the specialty is

10   neurosurgery.  It could have been Dr. Moquin, in which case

11   it could well have applied to the relevant time period.  As I

12   stated earlier, if it's from Dr. Eng and Dr. Kelley, it

13   probably didn't, but I think there was a duty on the part of

14   the ALJ to establish that and certainly to discuss this

15   opinion and why it may have been rejected.

16           The -- I recognize the difficulty at this late date

17   of establishing plaintiff's condition prior to the date of

18   last insured status but I think at the very least filling

19   these gaps and perhaps reaching out to an expert with

20   interrogatories to review the medical records and give an

21   opinion as to the plaintiff's status.  And the issue here is

22   also, so Dr. Grammar's opinion was given some weight but the

23   ALJ stated there is -- there are more limitations than

24   Dr. Grammar's opinion reflect, but we don't know how much

25   more and we don't know how the administrative law judge

1  arrived at that without playing doctor and reviewing raw

2  medical data.  There really isn't anything in the treatment

3  notes that I could find that would equate to what the court

4  found in *Tankisi* where a treating source issued an opinion in

5  notes as to the functional capabilities of the plaintiff.

6        So I think there are several errors in this case.

7  I don't find any persuasive evidence of disability, but I do

8  find error.  I do find that the resulting determination,

9  therefore, is not supported by substantial evidence.  I would

10  grant judgment on the pleadings to the plaintiff without a

11  directed finding of disability and order the matter be

12  remanded for further consideration.

13        Thank you both for excellent presentations.  Hope

14  you have a good day, and stay safe.

15        MR. FAIR:  Thank you, your Honor.

16        (Proceedings Adjourned, 12:04 p.m.)

17

18

19

20

21

22

23

24

25

38

CERTIFICATE OF OFFICIAL REPORTER

     I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
Official Realtime Court Reporter, in and for the
United States District Court for the Northern
District of New York, DO HEREBY CERTIFY that
pursuant to Section 753, Title 28, United States
Code, that the foregoing is a true and correct
transcript of the stenographically reported
proceedings held in the above-entitled matter and
that the transcript page format is in conformance
with the regulations of the Judicial Conference of
the United States.

                    Dated this 13th day of May, 2021.


                         /S/ JODI L. HIBBARD

                         JODI L. HIBBARD, RPR, CRR, CSR
                         Official U.S. Court Reporter